---

In re WALL.†

(District Court, E. D. Oklahoma.   June, 1910.)

1. SALES (§ 451*)—CONDITIONAL SALES—WHAT LAW GOVERNS.
    Where a conditional sale is made in one state, but contemplates or provides that the property is to be delivered or used in another state, the construction and validity of the contract is to be determined by the law of the latter state.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. § 1323; Dec. Dig. § 451.*]

2. BANKRUPTCY (§ 184*) — RECLAMATION OF PROPERTY — CONDITIONAL SALE
    CONTRACT—CONSTRUCTION OF STATUTE—"CREDITORS."
    In Comp. Laws Okl. 1909, § 7911, which makes unrecorded conditional sale contracts void "as against innocent purchasers, or the creditors of the vendee," the word "creditors" is limited in meaning to such creditors as have acquired a specific lien upon the property; and the mere intervention of bankruptcy proceedings against the purchaser does not change the status of the property, but the trustee takes no greater right therein than the bankrupt had as against the seller.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*
    For other definitions, see Words and Phrases, vol. 2, pp. 1713–1727; vol. 8, pp. 7622, 7623.]

In the matter of J. B. Wall, bankrupt.   On review of order of referee denying petition of the Southern Rock Island Plow Company to reclaim property.   Reversed.

Bledsoe & Little, of Oklahoma City, Okl., and Finley, Knight & Harris, of Dallas, Tex., for petitioner.

Thomas Norman, of Ardmore, Okl., for trustee.

CAMPBELL, District Judge.   This matter is now before the court on petition of claimant, the Southern Rock Island Plow Company, ·to review the action of J. W. Harreld, referee, in dismissing its petition to reclaim certain goods in the possession of the bankrupt at the time the petition was filed, and which afterwards passed into the possession of the trustee.   The goods were delivered to the bankrupt under a contract dated November 2, 1908, and by the terms of which claimant contends the title was retained by it.   It is also urged by claimant that the bankrupt obtained the goods by fraudulent statements made to certain commercial agencies, by which he secured a false rating as to his financial ability, upon which claimant relied.   As the claimant must

---

†Ed. Note.—This case has reference to transactions in 1909, before amendment of Bankruptcy Act, § 47a, Act June 25, 1910, c. 412.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

prevail upon the ground that the title to the goods did not pass to the bankrupt, and hence, under the circumstances in this case, did not pass to the trustee, it is unnecessary to consider the question of fraudulent procurement or false rating.

Section 7911 of Snyder's Compiled Statutes of Oklahoma provides:

"That any and all instruments in writing, or promissory notes now in existence or hereafter executed, evidencing the conditional sale of personal property, and that retain the title to the same in the vendor until the purchase price is paid in full. shall be void as against innocent purchasers, or the creditors of the vendee. unless the original instrument, or a true copy thereof, shall have been deposited in the office of the register of deeds in and for the county wherein the property shall be kept, and when so deposited shall be subject to the law applicable to the filing of chattel mortgages."

[1] The contract involved in this case is one of conditional sale, and not a mortgage, as claimed by the trustee. In re Columbus Buggy Co. (C. C. A., 8th Cir.) 16 Am. Bankr. Rep. 759, 143 Fed. 859, 74 C. C. A. 611 ; Bryant v. Swofford Bros., 214 U. S. 279, 22 Am. Bankr. Rep. 111, 29 Sup. Ct. 614, 53 L. Ed. 997 ; Jones on Chattel Mortgages, §§ 26 and 26a.

"Where a conditional sale is made in one state, which contemplates or expressly provides that the property is to be delivered or used in another state, the law of the latter state governs." Loveland on Bankruptcy, p. 448.

So that, whether the contract be considered a Texas or Oklahoma contract, still it must be measured by the laws of the latter state.

[2] The contract under which the goods in this case were delivered was not recorded. It is necessary, therefore, to determine the meaning of the term "creditors" in the statute, and whether under the laws of Oklahoma it is void as to ordinary or general creditors, and hence void as to the trustee. For if it is not void as to such creditors, but only as to such as shall have taken the steps necessary to entitle them to a specific lien upon or interest in the property, then the mere intervention of bankruptcy proceedings does not in any way change their status, and the trustee merely steps into the shoes of the bankrupt, and enjoys no greater right to retain the goods than the bankrupt did before such proceeding. York Mfg. Co. v. Cassell, 201 U. S. 344, 15 Am. Bankr. Rep. 633, 26 Sup. Ct. 481, 50 L. Ed. 782 ; In re Fish Bros. Wagon Co. (C. C. A., 8th Cir.) 21 Am. Bankr. Rep. 149, 164 Fed. 553, 90 C. C. A. 427, 26 L. R. A. (N. S.) 433. Nor does the fact that the goods were sold by the conditional vendee in the regular course of business of itself render this contract fraudulent. Bryant v. Swofford Bros., supra; In re Dunlop (C. C. A., 8th Cir.) 19 Am. Bankr. Rep. 361, 156 Fed. 545, 86 C. C. A. 435.

No decision of the Supreme Court of Oklahoma, construing the term "creditors," as used in the statute regarding conditional sales, is cited by counsel. Nor has the court been able to discover any which appears to clearly define this term. If this term had received judicial construction in this state, that, of course, would govern in the determination of this case. York Mfg. Co. v. Cassell, supra. The Supreme Court of Oklahoma, in the case of Cornelius v. Boling et al., 18 Okl. 469, 90 Pac. 874, held that the trustee in bankruptcy might recover

property from the mortgagee taken under unrecorded mortgage, where the possession of the property was taken within four months prior to the filing of the bankruptcy petition. In this case the court cites the case of Greenville National Bank v. Evans-Snyder-Buel Co. et al., 9 Okl. 353, 60 Pac. 249, as authority for holding the mortgage void as against the creditors of the mortgagee. An examination of the case cited shows that the creditors involved were attaching creditors. In concluding the opinion, the court cites Mueller v. Nugent, 184 U. S. 1, 7 Am. Bankr. Rep. 224, 22 Sup. Ct. 269, 46 L. Ed. 405, to the effect that the filing of the petition in bankruptcy amounts to an attachment and injunction.

It appears that the Oklahoma court overlooked the qualification which the Supreme Court placed upon this doctrine in the later case of York v. Cassell, supra. So that it cannot be said that the state courts have definitely construed the term "creditors" as used in the statute. By section 2929, Snyder's Compiled Laws of Oklahoma, it is provided:

"In the absence of fraud, every contract of a debtor is valid against all his creditors, existing or subsequent, who have not acquired a lien upon the property affected by such contract."

This section was adopted in 1890. The statute relating to the recordation of conditional sale contracts was enacted in 1897, and the second section of the act specifically repeals all former acts or parts of acts in conflict therewith, so that it is doubtful whether the former act may be considered as in any way limiting the latter. In 8 American & English Encyclopedia of Law, it is said:

"In some states recording acts provide that unrecorded conveyances shall be void as against creditors. The term 'creditors,' however, has been frequently held not to include creditors at large, but is confined to judgment creditors and those who have in some manner affected a lien on the debtor's property. So, when statutes require chattel mortgages to be registered for the protection of creditors, it has been held that a mere creditor at large is not within the protection of the statute."

In the fifth volume of the same work, at page 1016, it is said:

"A creditor of the mortgagor, entitled to take advantage of the recording acts, is generally held to be a creditor who has perfected a lien by legal process upon the mortgaged property. A creditor at large cannot attack the mortgage"—citing numerous authorities.

Kansas has long held a statute providing that an unrecorded mortgage of property, not followed by immediate delivery and actual and continued change of possession, should be void as to the creditors of the mortgagor. In the early case of Cameron v. Marvin, 26 Kan. 612, Judge Valentine, in construing the term "creditors" as used in this statute, said:

"Counsel for defendant in error seems to contend that where a chattel mortgage is not recorded immediately after it is executed, and the property is not immediately delivered to the mortgagees, it is absolutly void as to all creditors whose debts have been created subsequent to the execution of the mortgage and prior to its being recorded, and prior to the delivery of the property, without reference to any lien procured upon the property by virtue of an attachment, or execution, or otherwise; that is, they claim that such

a mortgage is so absolutely void as to general creditors, whose debts have been created after the execution of the mortgage and before the recording of the same, or before the delivery of the property, that they may obtain a lien upon the property after the mortgage is recorded and after the property is delivered, by virtue of an attachment, or other legal process. * * * But whether the doctrine claimed by counsel is sustained by any authority or not, we do not think it is sound. Of course, a chattel mortgage not recorded, of property not delivered, is void as against all creditors who have no notice of the mortgage; but they have no right to or interest in any specific property until they have obtained this right or interest by some legal process. They have no more right to the property than the mortgagee has whose mortgage is void. They all have an equal right to the property—that is, they all have a right to procure a lien upon it or interest in it by virtue of legal process, or chattel mortgage, or purchase; and the one who first acts will obtain the prior right in and to the property."

This holding has been extensively followed in Kansas, and I find it to be the construction by most of the state courts that have considered it, and I am constrained to hold that such is the proper construction of the terms as used in the statute under consideration, and at any rate until the Supreme Court of the state shall have definitely construed it.

In the case of Cornelius v. Bolling, supra, the Supreme Court of Oklahoma Territory held that:

"The rights of the parties are to be measured from the date of the commencement of bankruptcy proceedings, and we are of the opinion that such proceedings are commenced by the filing of the petition in bankruptcy, and when such petition is filed all creditors and claimants against the estate must stop, and then and there and thereafter measure their rights as the same are affected by the Bankruptcy Act. In voluntary bankruptcy, if the petitioner does not secure an adjudication and ultimate discharge the parties may proceed according to their respective priorities at the time of the filing of the petition; but, if he does succeed, it is immaterial when the trustee was appointed, for his right to the estate dates from the date of the filing of the petition, and not from the date of his appointment as trustee."

There is no charge of fraud in connection with the contract involved here. The validity of such contracts, in the absence of fraud, is well established. Harkness v. Russell, 118 U. S. 663, 7 Sup. Ct. 51, 30 L. Ed. 285; Bierce v. Hutchins, 205 U. S. 347, 27 Sup. Ct. 524, 51 L. Ed. 828; Bryant v. Swofford Bros., supra.

It follows that the order of the referee, disallowing the petition, must be overruled, and an order will be entered, directing the trustee to pay to petitioner the sum of $1,857, now held by him in lieu of the goods sought to be recovered.