## In re FISH BROS. WAGON CO.

### (Circuit Court of Appeals, Eighth Circuit. October 23, 1908.)

### No. 88, Original.

**1. BANKRUPTCY (§ 207*)—GENERAL ASSIGNMENT—LIENS ACQUIRED BY ASSIGNEE.**

A title or lien acquired by an assignee under a general assignment valid according to the law of the state where it is made, that is to the advantage of the estate when it has subsequently passed into bankruptcy, is not necessarily destroyed by the supersession of the assignment proceeding; but upon the order of the court of bankruptcy it may be retained by the trustee for the benefit of the creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 207.*]

**2. BANKRUPTCY (§ 140*)—LIENS—CONDITIONAL SALE CONTRACT.**

Under the law of Kansas, by decision, an assignee under a general assignment represents, not only the assignor, but his creditors as well, and as such representative acquires title to the assigned property, which is good as against a contract of conditional sale not filed as required by statute. *Held*, where a debtor in Kansas made a general assignment under the state law and was subsequently adjudicated a bankrupt, that under Bankr. Act July 1, 1898, c. 541, § 67a, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449), which provides that "claims which for want of record * * * would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate," the right of the creditors, through the assignee, as their representative, to property

---

held by the bankrupt under an unrecorded contract of conditional sale, could be enforced by the trustee under subdivision "b" of said section.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

On Petition to Revise.

Samuel Feller, Edwin A. Krauthoff, Arthur Miller, and Karnes, New & Krauthoff, for petitioner.

George W. Freerks, M. C. Freerks, and Ed. R. Bane, for respondent trustee.

Before SANBORN and HOOK, Circuit Judges, and PHILIPS, District Judge.

HOOK, Circuit Judge. This is a proceeding to revise in matter of law an order of a court of bankruptcy denying the petition of the Fish Bros. Wagon Company for the possession of certain personal property. The wagon company sold and delivered some of its manufactured products to R. P. Roark & Co., a partnership at Scott City, Kan., under a written contract which manifestly is a contract of conditional sale, and not one of bailment, as contended. There was no deposit of the contract or copy thereof with the register of deeds of the county in which the property was kept, and therefore under a Kansas statute (section 4523, Gen. St. 1905) the contract was "void as against innocent purchasers or the creditors" of the vendees. In this situation the vendees, Roark & Co., made a general assignment for the benefit of creditors as authorized by the state law, and a few days later they were adjudged bankrupts in an involuntary proceeding. A trustee in bankruptcy was thereafter duly selected. The wagon company, claiming under the contract, petitioned the referee in bankruptcy for the possession of the goods, and the trustee asked that what he termed the lien of the assignee under the general assignment be kept alive for the benefit of the creditors in the bankruptcy proceeding. The referee denied the petition of the wagon company and sustained that of the trustee. The order of the referee was affirmed by the District Court.

Were it not for the intervention of the assignment between the making of the contract of conditional sale and the bankruptcy proceeding, the right of the wagon company would be clear. Under the Kansas statute the failure to deposit the contract or copy with the register of deeds did not make the instrument invalid as between the parties to it, but only so as to innocent purchasers and creditors of the vendees. The term "creditors" means those having some specific lien upon or right to the property involved and not mere general creditors. This was held to be so in a case involving the Kansas statute requiring the filing of chattel mortgages (Youngberg v. Walsh, 72 Kan. 220, 83 Pac. 972); and as the language of that statute and of the one relating to contracts of conditional sale is similar, and their purpose is the same, the same construction should be adopted. It is well settled that a trustee in bankruptcy is not an innocent purchaser or a lien creditor, but that generally speaking, he takes only such rights as the bankrupt himself had. York Mfg. Co. v. Cassell, 201 U. S. 344, 26

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Sup. Ct. 481, 50 L. Ed. 782. Attention therefore turns to the effect of the general assignment and the provisions of section 67 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 564, 565 [U. S. Comp. St. 1901, p. 3449]) ; and the inquiry is whether the trustee is in a better position than he would have been without them.

The general doctrine is that an assignee in a general assignment under a state statute is neither an innocent purchaser nor a creditor having a lien on the assigned property, but that, like a trustee in bankruptcy, he stands in the shoes of his insolvent and is possessed of no greater right. It seems, however, to be otherwise in Kansas. In Withrow v. Citizens' Bank, 55 Kan. 378, 40 Pac. 639, it was held that an assignee is not merely the representative of the debtor but is also a trustee for the creditors, in whom title is vested by the deed of assignment, and that an unfiled chattel mortgage is void as against the right so secured by him. The effect of the assignment in question here is to be determined by the Kansas law (First Nat. Bank v. Staake, 202 U. S. 141, 26 Sup. Ct. 580, 50 L. Ed. 967), and it is the same upon an unfiled contract of conditional sale as upon an unfiled chattel mortgage. So, had no bankruptcy proceeding been instituted, the assignee would have prevailed over the wagon company in a contest for the possession of the property. Is the right of the assignee available to the trustee, or was it wholly destroyed by the bankruptcy proceeding?

The trustee relies upon subdivisions "a," "c," and "f" of section 67 of the bankruptcy act. The last of these authorizes the preservation, for the benefit of the bankrupt estate, of liens obtained, through legal proceedings against the insolvent debtor within four months prior to the filing of a petition in bankruptcy against him, and subdivision "c" provides for the subrogation under certain conditions of the trustee to the rights of one who acquires a lien by a suit or proceeding at law or in equity begun against the debtor within the four months' period. There is difficulty in the application of these provisions to the case at bar. Although the right of the assignee under the assignment might be called a "lien" in the sense that it is a right to resort to specific property for the satisfaction of the debts of the assignor, and is therefore a charge upon such property, and while the assignment proceeding considered in its entirety may be termed a "legal proceeding," because under the Kansas law it is conducted in a court of record, yet it is a voluntary proceeding, and is not, as contemplated by the provisions of the bankruptcy act above referred to, a proceeding against the insolvent debtor. We think, however, that section 67a is sufficiently comprehensive to cover the case. It provides:

"Claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate."

At the time of the institution of the bankruptcy proceeding the creditors, through the assignee as their representative, had obtained by the general assignment, which was entirely valid under the local law, a right to have the property now in controversy subjected to the payment of their debts, to the exclusion of the claim of the wagon company under its unfiled contract of conditional sale. Because the as-

signment was superseded by the bankruptcy proceeding, it does not follow that no rights whatever could grow out of it. True, the making of the assignment was an act of bankruptcy; but, when made, it was authorized by the law of the state, and was valid until done away with by a proceeding that took precedence. An assignment cannot be said to be absolutely prohibited by the bankruptcy. act, irrespective of the institution of a bankruptcy proceeding. Randolph v. Scruggs, 190 U. S. 533, 537, 23 Sup. Ct. 710, 47 L. Ed. 1165. Though the title of a trustee in bankruptcy to the property he takes is not by way of succession to that of an assignee under an assignment that is superseded, yet in such cases many things done by the latter for the benefit of the estate may be retained and enjoyed by the former. As already observed, the assignee, as the representative of all the creditors, had secured a specific right in the property in controversy by a deed of assignment valid under the Kansas law; and if this right, beneficial, as it is, to the bankrupt estate, is to be stricken down, it must be because the assignment was wholly invalid for every purpose and the invalidity related back to the date of the deed. That might be so in case of actual fraud, but there was no such element in the particular transaction. In Randolph v. Scruggs, supra, the court, in considering the effect of a general assignment honestly made, rejected the doctrine of constructive fraud. The court said:

"It had no general fraudulent intent. It was voidable only in case bankruptcy proceedings should be begun. At the time when it was made the institution of such proceedings was uncertain. It seems to us it would be a hard and subtle construction to say, as seems to have been thought in Bartlett v. Bramhall, 3 Gray (Mass.) 257, 260, that when they were instituted they not only avoided the assignment, but made it illegal by relation back to its date, when, if they had not been started, it would have remained perfectly good."

Again:

"But the assignee is acting lawfully in what he does before proceedings in bankruptcy are begun, and, although it may be assumed that the avoidance of the assignment relates back to the date of the deed, still, so far as his services or services procured by him tend to the preservation or benefit of the estate, the mere fiction of relation is not enough to forbid an allowance for them."

See, also, the opinion of this court in Summers v. Abbott, 58 C. C. A. 352, 122 Fed. 36.

We think that a title or lien acquired by an assignee under a general assignment valid according to the law of the state where it is made, that is to the advantage of the estate when it has passed into bankruptcy, is not necessarily destroyed by the supersession of the assignment proceeding, but that upon the order of the court of bankruptcy it may be retained by the trustee for the benefit of the creditors. This conclusion is in harmony with the object sought by express provisions of the bankruptcy act for the preservation of liens obtained in judicial proceedings against the debtor, and it is a fair corollary of the settled rule allowing the assignee compensation for acts that are beneficial to the estate which afterwards passes to the trustee.

The petition is denied.