No. 24,280.

*In re* The Estate of NICK KASTNER, Deceased, *Appellee,* v. THE
NORWAY STATE BANK, *Appellant.*

SYLLABUS BY THE COURT.

CHATTEL MORTGAGE—*Mortgage Unrecorded—Mortgagor's Death While in Pos-
session of Mortgaged Property—Mortgage Valid.* A bank was given a chat-
tel mortgage to secure a loan of money, and failed to record it in the proper
county. Afterwards the mortgagor died in possession of the mortgaged
property, and his executor sold it in due course of administration of the
estate. *Held,* the mortgage was a valid lien as to the executor, and entitled
the mortgagee to the proceeds of the sale, as against the claims of creditors
without lien or equivalent special interest at the date of the mortgagor's
death.

Appeal from Cloud district court; JOHN C. HOGIN, judge. Opinion filed
March 10, 1923. Reversed.

*Olin Hunter,* and *Tom Kennett,* both of Concordia, for the appellant.

*A. M. French,* of Concordia, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The appeal was taken from a judgment of the district
court declaring that the Norway State Bank's chattel mortgage on
property belonging to the estate of the deceased mortgagor was void.

Nick Kastner gave a chattel mortgage to the bank to secure pay-
ment of a note given for borrowed money. He had been a resident
of Republic county, and the mortgage was filed for record there. He
was, however, a resident of Cloud county. Kastner died on July 31,
1921. On August 4, the cashier of the bank was appointed executor
of his will. On that day, a creditor whose claim would belong in
the first class, and creditors whose claims would belong in the fifth
class, filed demands against the estate. On August 16 these credi-
tors were requested by the probate judge to defer making proof of
claim until all claims were in, when a day would be appointed for
hearing them. On August 23, the bank filed its mortgage for record
in Cloud county. On August 26, the executor sold property belong-
ing to the estate, including property covered by the mortgage. The
controversy relates to the proceeds of the sale of the latter class of
property. The assets of the estate are sufficient to pay all claims
above the fifth class, but are not sufficient to pay fifth-class claims
in full.

It is settled law in this state that, as between mortgagor and mortgagee, neither record of the mortgage nor possession of the property is essential to lien, and that, as between the mortgagor's personal representative and the mortgagee, neither record of the mortgage nor possession of the property is essential to lien. An executor or administrator stands in the shoes of the decedent in respect to mortgages given by the decedent, whether in fraud of creditors or otherwise. An executor or administrator does not "represent" creditors, and is not a "trustee" of creditors, in the sense that he can attack the decedent's mortgages. He is bound by them precisely as the decedent was bound, and creditors must protect themselves, if they desire to do so. On the other hand, the personal representative can make no defense against a chattel mortgage which the mortgagor could not have made, and this is true whether the mortgage was recorded or not, and whether possession of the property changed or not. These principles were established by the early cases of *Crawford's Adm'r v. Lehr,* 20 Kan. 509, and *Denny v. Faulkner,* 22 Kan. 89, and have never been departed from.

The general creditors of the estate cite and rely on the cases of *Chapin v. Jenkins,* 50 Kan. 385, 31 Pac. 1084, and *Withrow v. Citizens Bank,* 55 Kan. 378, 40 Pac. 639. They have no pertinency to this controversy. In each case the mortgagor made an assignment for the benefit of creditors. In the Chapin case, it was held the assignee might contest the validity of chattel mortgages given by the assignor, because the assignee took title as trustee for and representative of creditors. In the Withrow case, it was held a chattel mortgage not recorded before the assignee took possession was void against the assignee. The cases were well decided, and serve to emphasize the distinction between the offices of an assignee for the benefit of creditors, and an administrator or executor of a mortgagor.

The statute provides that a chattel mortgage not accompanied by change of possession is void as against creditors and subsequent purchasers and mortgagees in good faith, unless the mortgage be deposited for record. (Gen. Stat. 1915, § 6495, as amended by Laws of 1919, ch. 234.) The decisions of this court are too numerous to require citation, that the word creditors in this statute does not mean general creditors. It means creditors having some specific lien on the property covered by the mortgage. Such a lien may be acquired, for example, by obtaining judgment against the mortgagor

and levying execution on the property. A judgment establishing a creditor's claim, however, would give no lien, and if between judgment and seizure the mortgage were recorded, it would have priority.

Suppose a chattel mortgage were given to secure a debt at the close of a business day, and were filed for record at the opening of the register's office the next morning. What sort of lien or increment of interest or priority would accrue to general creditors if, after he gave the mortgage, but before it was filed, the mortgagor died? Manifestly none, and the general creditors would occupy no better position if the mortgage were not filed for record at all. There is lack of harmony in the authorities on this subject (see L. R. A. 1918 A, p. 327), but there is nothing perplexing about it here, because of the definitely established status of the general creditor and of the administrator in respect to unrecorded mortgages of the decedent. General creditors have no lien of any kind, the holder of the unrecorded mortgage has a lien which the general creditors are not in position to contest, and the executor or administrator takes and administers the property burdened with the chattel-mortgage lien. In this instance, by giving the mortgage, the mortgagor made a reduction of his assets available for payment of unsecured debts, of which his general creditors were not qualified, at the time of his death, to complain. The mortgagee ought not to gain any advantage by subsequently filing the mortgage, because general creditors were restricted in their remedies, and there should be no scramble for preference after death. Neither the secured nor the unsecured creditor gained or lost by the intrusion of death. The status of all creditors is to be determined as of that time, by application of the principles of law governing the subject, and the resources to which general creditors may look for payment of their claims when proved was limited to assets in the condition in which they stood when the mortgagor died. When unsecured claims against an estate are established, the law classifies them, and requires payment of some before others. Satisfaction can only be made, however, from assets available to creditors without lien.

The general creditors cite and rely on the case of *Blackman v. Baxter,* 125 Iowa, 118; 70 L. R. A. 250. Baxter gave a chattel mortgage covering his stock of merchandise, at eleven o'clock at night on April 12. The mortgagee took possession at seven o'clock in the morning of April 13, and filed his mortgage later in the day. Baxter

*In re* Kastner Estate.

committed suicide early in the morning of April 13, before the mortgagee took possession. The syllabus reads as follows:

"The interest given general creditors of an insolvent estate by statutes providing for its distribution is sufficient to entitle them, through the administrator, to attack a chattel mortgage thereon not recorded before the death of the mortgagor, under a statute providing that no mortgage of personal property, where the mortgagor retains actual possession thereof, is valid as against existing creditors, unless recorded." (p. 118.)

In the present case, Kastner was solvent when the mortgage was given, and his subsequent insolvency did not impair the lien of the bank's mortgage. In this state, an insolvent may prefer creditors, and the mortgage would have been valid if it had been given the day before Kastner died. However, we have here no question of invalidity for any cause except failure to record before death of the mortgagor, and the question of invalidity for that reason is raised by creditors who would be disqualified to do so if the mortgagor were alive.

The Iowa court seems to concede that general creditors who, the hour before the mortgagor's death, lacked capacity, for want of lien, to complain of the mortgage, did not, by virtue of the statute relating to distribution of estates, acquire such capacity. Death, however, brings on a settlement of estates, and the court seems to hold the procedural statute created an interest in general creditors which somehow gave the administrator authority which he could exercise for their benefit. The fallacy in this reasoning was exposed in a dissenting opinion of Justice McClain, concurred in by Justice Weaver, and the conclusion reached is incompatible with familiar principles of the law of this state.

The foregoing renders it unnecessary to consider a section of the brief of the general creditors devoted to discussion of the subject of taking possession under an unrecorded chattel mortgage, and renders it unnecessary to consider a claim that the bank was estopped to assert its lien because of a statement of its cashier, made about the time he was appointed executor.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for the bank.