### GALBRAITH v. FIRST NAT. BANK OF ALEXANDRIA, MINN.

### In re RIVERSIDE MFG. CO.

(Circuit Court of Appeals, Eighth Circuit. February 12, 1915.)

### No. 4203.

1. CORPORATIONS ☞415—MORTGAGES—AUTHORITY TO EXECUTE—AUTHORITY OF PRESIDENT IN SOLE CONTROL OF BUSINESS.

The business of a corporation organized to take over a business formerly conducted by its president, who owned most of its stock, most of the other stockholders being his relatives, was conducted in the same manner as before the corporation was formed; no dividends being declared, and the president, who managed the business, taking whatever money he needed for his living or other expenses as if it were his individual property. His wife was first elected secretary, but subsequently another stockholder was elected, and thereafter for several years no stockholders' or directors' meetings were held. None of the other stockholders took any interest in the management of the corporation, or made any inquiries as to the business, and neither the president's wife nor the secretary subsequently elected discharged any of the duties of a secretary. To secure a loan of money received and used in the corporation's business, the president and his wife, without authority from the board of directors, and without their knowledge, executed a mortgage, which they acknowledged as president and secretary, to a bank, which was told and believed that the wife was secretary. None of the directors or stockholders had objected to the mortgage. *Held*, that the mortgage was valid, since, while ordinarily the president and secretary of a corporation have no power to execute a mortgage on the corporation's property without authority from the board of directors, when the president or other officer is intrusted by the directors with the sole management of the corporation and permitted to manage the business as if it were his own, the directors being nonresidents and never meeting, a mortgage executed by him for moneys loaned to the corporation, and received and used solely for its benefit, is valid.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1664–1669; Dec. Dig. ☞415.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. BANKRUPTCY ⬅️⬅️151—RIGHTS OF TRUSTEE.

Except as to matters especially excepted by Bankr. Act July 1, 1898, c. 541, 30 Stat. 544, a trustee in bankruptcy occupies no better position than the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 193, 239; Dec. Dig. ⬅️⬅️151.]

Appeal from the District Court of the United States for the District of Minnesota; Page Morris, Judge.

In the matter of the Riverside Manufacturing Company, bankrupt. From a decree allowing a claim of the First National Bank of Alexandria, Minn., as a secured claim, John P. Galbraith, as trustee in bankruptcy, appeals. Affirmed.

H. H. Flor, of St. Paul, Minn. (A. E. Boyesen, of St. Paul, Minn., on the brief), for appellant.

C. J. Gunderson, of Alexandria, Minn. (Hugh E. Leach, of Alexandria, Minn., on the brief), for appellee.

Before SANBORN and SMITH, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge. [1] This is an appeal from a decree entered in a proceeding in bankruptcy in which the appellee filed a claim secured by a mortgage on property of the bankrupt estate. The referee allowed the claim as a secured claim, and upon a petition to review the District Court approved it. The findings of facts made by the referee are based upon undisputed evidence, except as to one item. There was a conflict in the evidence as to whether the cashier of the appellee bank, who procured the mortgage from the bankrupt corporation, had been informed and believed that Mrs. Martha O. Amundson was the secretary of the corporation when she signed the mortgage and affixed the seal of the corporation. The referee, who had the witnesses before him, found that issue in favor of the appellee, and this finding was approved by the trial court. As there was substantial evidence to warrant that finding this court will not disturb it. The findings of facts made by the referee are as follows:

"(1) The Riverside Manufacturing Company was incorporated under the laws of the state of Minnesota on August 18, 1904, with its principal place of business in the city of Alexandria, in said state, and with corporate powers to manufacture store fixtures, shelving, ice boxes, cooling rooms, and all articles of which iron and wood, or either of them, form the principal component parts, and the manufacture of the materials used therein, and to sell and dispose of such manufactured products, and do all such other acts and things as are incident, necessary, convenient, or conducive to the attainment of any of the objects aforesaid, or to the conduct or management of the business of the corporation.

"The original incorporators were Henry O. Amundson, Martha O. Amundson, John A. Thronson, J. M. Amundson, and E. A. Cooper, and of them Henry O. Amundson was chosen president and treasurer, E. A. Cooper vice president, and Martha Amundson secretary, to hold their offices until the next annual meeting of the stockholders, unless sooner removed, and until their successors were elected and qualified. The annual meeting of the stockholders was to be held on the first Tuesday in September of each year.

"Section 6 of its articles of incorporation provides that the government of the corporation and management of its affairs shall be vested in a board of

five directors, to be elected from the stockholders at their annual meeting, and the directors immediately after their election to organize and elect from their board a president, vice president, secretary, and treasurer, to hold office for such term and perform such duties as shall be prescribed by the by-laws; and two such offices, except president and vice president, may be held by the same person. The duties of the officers were to be prescribd by the by-laws.

"(2) On January 14, 1905, by-laws were adopted. Section 1 of article II of such by-laws provides that the general affairs of the company shall be managed by the board of directors. Section 2 of article III provides that the president shall preside at all meetings of the stockholders and directors, sign certificates of stock, and perform such other duties as appropriately belong to his office. Section 4 of article III provides that the secretary shall keep records of all meetings of the stockholders and directors, give and publish all notices required by the by-laws, file and preserve all papers and documents appertaining to the business of the company, keep the corporate seal, attest all certificates of stock, and perform all such duties as belong appropriately to the office of secretary. Section 4 of article III provides that the treasurer shall receive all money due the company and deposit the same in the name of the company with such bank or banks as the board may direct, and disburse the same solely for the proper use of said company. It shall also be his duty to draw drafts, bank checks, and to sign and negotiate notes and acceptances made by or in favor of this corporation in the regular course of its business.

"(3) The first meeting of the stockholders was held January 14, 1904, and three annual meetings were thereafter held on September 5, 1905, September 4, 1906, and September 3, 1907. At the last annual meeting, held September 3, 1907, the following board of directors were elected, viz.: H. O. Amundson, M. O. Amundson, E. A. Cooper, J. M. Amundson, and J. A. Thronson. These directors constituted all the stockholders, except James Amundson. There had been in all 301 shares of the capital stock issued, and this stock was owned by said stockholders as follows: H. O. Amundson, 250 shares; M. O. Amundson, 10 shares; E. A. Cooper, 1 share; John Amundson, 10 shares; John Thronson, 20 shares; and James Amundson, 10 shares. No change had taken place in the personnel of the stockholders, or in the number of shares held by each, at the time of the execution of the mortgage hereinafter referred to, except John Amundson, who died about five years ago. All the stockholders, except John Thronson, were relatives of H. O. Amundson, the president of the company; M. O. Amundson being his wife, E. A. Cooper a brother-in-law, and John and James Amundson his brothers. No meetings of the stockholders, either annual or special, have been held since September 3, 1907.

"(4) The records of the proceedings of the board of directors disclose that the first meeting was held January 4, 1905, when H. O. Amundson was elected president and treasurer, E. A. Cooper vice president, and M. O. Amundson secretary. At this meeting a motion was duly made and carried whereby H. O. Amundson was appointed manager of the factory and business of the company. Meetings of the board were also held, immediately after the adjournment of the stockholders' meeting, on September 5, 1905, September 4, 1906, and September 3, 1907, at which last meeting H. O. Amundson was elected president and treasurer, M. O. Amundson vice president, and John Thronson secretary. At each of these meetings a motion was made and carried whereby H. O. Amundson was elected manager. No meeting of the board of directors has been held since September 3, 1907.

"(5) That ever since its incorporation the Riverside Manufacturing Company has been engaged in the manufacture of office, church, and store fixtures of various kinds in Alexandria, Minn. During all of this time H. O. Amundson has been the president, treasurer, and manager, and has had the entire management of all its business. He has from time to time borrowed large sums of money on behalf of the corporation for use in its business, and executed the corporation's notes, evidencing such indebtedness. Since September 3, 1907, the last meeting of the board of directors, none of the directors have paid any attention to the business of the corporation and have taken no action with reference thereto, either as a board or individually, but have al-

lowed him to exercise full and complete control and management of the corporate business. During all of this time he never kept an account at the bank in the name of the Riverside Manufacturing Company, but all moneys belonging to the corporation were deposited by him to the credit of his individual account and checked against the same for money paid out on behalf of the corporation.

"(6) That during the years 1905 and 1906, the said H. O. Amundson, as president and manager of said corporation, and on its behalf and for its benefit, and in the usual course of business, borrowed from the First National Bank of Alexandria, Minn., certain sums of money; that on June 26, 1906, the total amount so borrowed amounted to $5,000, and the note of the manufacturing company in said amount was executed by Mr. Amundson and delivered to said bank; that all of said money was received by said Riverside Manufacturing Company, and used by it in its business; that said note was thereafter renewed from time to time, each renewal note payable on demand. That H. O. Amundson, as president and manager of the company, has paid the interest on said note twice each year.

"(7) That in the first part of July, 1912, the bank wanted said note secured and requested Mr. Amundson to secure the same; that it was then agreed between Mr. Amundson, president and manager of the company, and P. O. Unumb, the cashier of said bank, that a mortgage should be given upon the company's factory; that the cashier, Mr. Unumb, inquired of Mr. Amundson who was secretary of the Riverside Manufacturing Company and was informed that Mrs. Amundson was; that thereupon a new note was given for said amount, payable on demand, with interest before and after maturity until paid at the rate of 8 per cent. per annum.

"That on the same day and for the purpose of securing the payment of said promissory note, the Riverside Manufacturing Company, executed and delivered a mortgage bearing date July 9, 1912, whereby it mortgaged to said First National Bank of Alexandria all that tract or parcel of land lying and being in the county of Douglas, state of Minnesota, described as follows, to wit: Lot 4 of block 6 of subdivision of Lumber Yard and Mill Site Block of the original plat of Alexandria, Minn., according to the plat of said townsite on file and of record in the office of the register of deeds in and for Douglas county, Minn.—together with all buildings and structures on said premises situate, together with all machinery, planers, sawing machines, joining machines, sticker, gasoline engine, and all tools, equipments, and attachments to said manufacturing plant, used in the operation of said factory, also all manufactured goods or in course of construction, also all lumber and other material of every nature now in said factory buildings, which mortgage was duly executed on behalf of said corporation by H. O. Amundson, its president, and M. O. Amundson, its secretary, with the corporate seal affixed, and acknowledged by said parties before P. O. Unumb, notary public of Douglas county, Minn., the certificate of acknowledgment reciting that said H. O. Amundson and M. O. Amundson, being duly sworn, said that 'he and she is the secretary and president respectively of the Riverside Manufacturing Company, the corporation named in the foregoing instrument, and that the seal affixed to said instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors, and said H. O. Amundson, president, and M. O. Amundson, secretary acknowledged said instrument to be the free act and deed of said corporation.' That the registration tax on said mortgage was duly paid and said mortgage recorded in the office of the register of deeds of Douglas county, Minn., on October 3, 1912, at 2 o'clock p. m. in Book 28 of Mortgages, on page 545, and filed in the office of the city clerk of the city of Alexandria on October 5, 1912, at 3 o'clock p. m.

"(8) That the making of said mortgage, as aforesaid, had never been expressly authorized by the board of directors, nor ratified by them; that none of the directors, except H. O. Amundson and M. O. Amundson, who executed the mortgage on behalf of the corporation, ever had any actual notice or knowledge of the making thereof; that this was the first and is the only mortgage ever given by said corporation; that said mortgage was taken by said bank,

acting through its said cashier, in the usual course of business, in good faith, and without any knowledge or notice that the same had not been authorized by the directors, or that M. O. Amundson was not the secretary of the corporation, but took and received said mortgage, believing that H. O. Amundson and M. O. Amundson, who executed the same on behalf of the corporation, had the power and authority to give the same.

· ·"(9) That there is now due said bank upon the note and mortgage aforesaid the sum of $5,000, with interest at 8 per cent. per annum from June 26, 1913."

In addition to these findings of facts, the undisputed evidence shows that Henry O. Amundson had conducted the manufacturing establishment for a number of years as an individual. In the year 1904 he decided to have it incorporated, and the Riverside Manufacturing Company was accordingly incorporated under the laws of the state of Minnesota. The stockholders were Henry O. Amundson, who was made president and treasurer, Martha O. Amundson, his wife, who was made secretary, J. M. Amundson and John A. Amundson, who were his brothers, E. A. Cooper, his brother-in-law, and John A. Thronson. All of these stockholders were directors, except his brother John A. Amundson, who was then residing in the city of New York, and died about three years thereafter, never having been in Alexandria, the home of the corporation, during the time of its existence. There were only three stockholders' and directors' meetings held during the life of the corporation. At the first meeting, which was held on September 5, 1905, the only persons present were Henry O. Amundson and a proxy for John A. Thronson. The second meeting was held in September, 1906, at which the only persons present were Henry O. Amundson, his wife, Martha, and John A. Thronson. The third meeting was held in September, 1907, when the same three persons were present. Since then no meetings of any kind, either stockholders' or directors', were held. J. M. Amundson resided in South Dakota, several hundred miles from Alexandria, never visiting Alexandria, taking no interest whatever in the management of the corporation, and knew nothing of it. Cooper resided in another part of the state, some distance from Alexandria, and, although he visited the Amundsons at Alexandria occasionally, he took no interest whatever in the management of the corporation, made no inquiries as to the business, nor did he know anything of it. John A. Thronson, who was elected secretary at the meeting in 1907, visited Alexandria only when he attended the two meetings, one in 1906 and the other in 1907. He lived in South Dakota, between 400 and 500 miles from Alexandria, and since 1907 had never been in Alexandria, took no interest whatever in the management of the business, discharged none of the duties of a secretary, and never inquired about the business of the corporation. Mrs. Amundson attended to her household duties and knew nothing of the business. No dividend was ever declared, no salary fixed for the president and other officers, but whatever money Henry O. Amundson needed for his living or other expenses he drew out of the moneys of the concern in the same manner as if it were his individual property. In short, there was no change whatsoever in the management of the concern after it had been incorporated, but it was conducted as if it were the individual property

of Henry O. Amundson, and in the same manner as before the corporation was formed. Therefore the only question involved is whether upon these facts a mortgage of a Minnesota corporation, executed by the president and secretary, with the seal of the corporation, to secure an indebtedness justly due from the corporation, the proceeds of which it received and used in the conduct of its business, but which had not been authorized by the board of directors, is a valid lien against the trustee in bankruptcy.

Ordinarily the president and secretary of a corporation have no power to execute a mortgage on the property of the corporation without authority from the board of directors; but there are exceptions to this rule, and the facts in this case bring it clearly within the exception. Whenever a president or other officer is intrusted by the directors with the sole management of a corporation, the directors being nonresidents, and never meeting, permitting him to manage the business as if it were his own, a mortgage executed by him for moneys loaned to the corporation, and received and used for its benefit solely, is valid. Jenson v. Toltec Ranch Co., 174 Fed. 86, 89, 90, 98 C. C. A. 60, 63, 64; Cunningham v. German Insurance Bank, 101 Fed. 977, 41 C. C. A. 609; G. V. B. Mining Co. v. First National Bank, 95 Fed. 23, 36 C. C. A. 633; Poole v. West Point Butter & Cheese Ass'n (C. C.) 30 Fed. 513, 518, decided by Mr. Justice Brewer when Circuit Judge; Bell, etc., Co. v. Kentucky Glass Works, 106 Ky. 7, 50 S. W. 2, 1092, 51 S. W. 180; National State Bank v. Sandford, etc., Co., 157 Ind. 10, 60 N. E. 699; McElroy v. Minnesota, etc., Co., 96 Wis. 317, 71 N. W. 653; Northwestern Fuel Co. v. Lee, 102 Wis. 426, 78 N. W. 584; Magowan v. Groneweg, 16 S. D. 29, 91 N. W. 355. And the same principle has been recognized by the Supreme Court of Minnesota in Clearwater County Bank v. Bagley-Ogema Telephone Co., 116 Minn. 4, 133 N. W. 91, 36 L. R. A. (N. S.) 1132, Ann. Cas. 1913A, 622. None of the directors or stockholders seems to have objected to the execution of the mortgage. This may well be treated as an acquiescence. Walworth County Bank v. Farmers' Loan, etc., Co., 16 Wis. 629; Thomp. on Corp. (2d Ed.) § 2019.

The statute requiring authority from the board of directors is for the protection of the stockholders, in order that the managing officer may not deprive them of their property, and they alone can object. Hervey v. Illinois Midland Ry. Co. (C. C.) 28 Fed. 169, 174, decided by Mr. Justice Harlan; Westerlund v. Black Bear Mining Co., 203 Fed. 599, 612, 121 C. C. A. 627; In re New York Economical Printing Co., 110 Fed. 514, 49 C. C. A. 133; Thomp. on Corp. (2d Ed.) § 2564. As stated by Judge Sanborn, speaking for this court in the Westerlund Case:

"A corporation, which has executed and accepted the benefits of a contract within the scope of its powers, that is neither wrong in itself nor against public policy, and that is defective only because in its execution the corporation has failed to comply with some legal requirement enacted for the sole benefit of third persons, is estopped to assail it, and the beneficiaries of the requirement alone may avoid it. Hence the stockholders of this corporation, and they alone, have the right to avoid this lease, because they alone had any interest

in the compliance with the legal requirement that they should assent to its execution."

[2] That a trustee in bankruptcy occupies no better position than the bankrupt, except as to those matters especially excepted by the Bankruptcy Act, is well settled. Hewit v. Berlin Machine Co., 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986; York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782; In re Fish Brothers Wagon Co., 164 Fed. 553, 90 C. C. A. 427, 26 L. R. A. (N. S.) 433; In re E. M. Newton & Co., 153 Fed. 841, 83 C. C. A. 23, affirmed 214 U. S. 279, 29 Sup. Ct. 614, 53 L. Ed. 997.

The judgment sustaining the mortgage lien was right and is affirmed.