## THE EGERIA.

(Circuit Court of Appeals, Ninth Circuit. December 17, 1923. Rehearing Denied February 11, 1924.)

### No. 4067.

1. **Shipping &—32—Allegation of citizenship in mortgage foreclosure sufficient.**
    Allegation in a libel for mortgage foreclosure that trustee in mortgage "is a citizen of the United States" would warrant the inference that he was such citizen at the time the mortgage was executed.

2. **Shipping &—32—Failure to allege mortgage indorsed upon ship's document immaterial.**
    It is immaterial that libel to foreclose mortgage on ship failed to allege that the mortgage was indorsed upon the ship's document; it being the duty of the collector of customs to make the indorsement, and the presumption being, until the contrary is shown, that the collector duly performed his duty.

3. **Admiralty &—65—Failure of allegation requires exception.**
    If libel for foreclosure of mortgage on ship was bad for failing to allege that mortgage was indorsed on ship's document, the remedy of intervening claimants was to except to the libel; the defect being one which might have been cured by amendment.

4. **Corporations &—425(2)—Directors held estopped to deny agency or authority of one of them.**
    Directors of a corporation, part owner of a ship, *held* estopped to deny authority of one of them who was also secretary and managing officer, with the knowledge of another, to waive priority of a lien on the ship in favor of a mortgage to other part owners for advances to be made by them, where the two directors constituted a majority and could bind the board under Or. Laws, § 6869, and his act was never repudiated.

5. **Corporations &—426(10)—Officer's contract held ratified by receiving amount of loan.**
    Agreement by secretary and managing agent to waive priority of corporation's lien on a ship, of which it was part owner, in favor of a mortgage for advances, *held* ratified by receiving the amount loaned on the mortgage and never repudiating his act.

6. **Principal and agent &—169(1)—Ratification implied from acts or conduct.**
    Ratification of contract may be implied from acts or conduct.

7. **Maritime liens &—25½—One securing vessel's release entitled to lien for interest and expenses.**
    One advancing money necessary to release a ship under libel *held* entitled to a lien for interest paid on a note executed by him in order to borrow the money to release the ship and for his traveling and incidental expenses in securing its release under Act June 5, 1920 (Comp. St. Ann. Supp. 1923, § 8146¼ooo).

Appeal from the District Court of the United States for the District of Oregon.

Libel by F. H. Ransom, as trustee in mortgage on steamship Egeria, her masts, bowsprit, boats, anchors, rigging, tackle, apparel, and furni-

ture, to foreclose the mortgage, in which suit the Bankers' Discount Corporation and others intervene. From the decree, the named intervener and another appeal. Affirmed.

Winter & Maguire, of Portland, Or., for appellants.

Joseph, Haney & Littlefield and John C. Veatch, all of Portland, Or., for appellees.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge. The steamship Egeria was owned by a syndicate, the ownership being divided into 1,000 shares of $3,500 each. The appellant the Coast Shipbuilding Company owned 390 shares, and it was the managing owner. It had fitted the vessel for service and it had expended more than the syndicate contemplated. It was indebted to the appellant Bankers' Discount Corporation. The vessel thereafter lost money on a voyage to Australia. It became necessary to obtain $35,000 to pay the additional indebtedness and make certain alterations in the ship. Donald W. Green was a director, stockholder, and the secretary of the Coast Shipbuilding Company and conducted its affairs. He called a meeting of the shareholders of the syndicate for the purpose of raising the needed $35,000. On his assurance that if they would advance the money they would receive as security a mortgage on the ship which would be a first lien thereon, certain of the shareholders advanced the money and received the mortgage. Thereafter the ship, while on a coastwise voyage, was libeled at San Pedro for seamen's wages. The appellee Mason expended the necessary sums to release her and to return her to her home port at Portland, Or. The appellee Ransom, the trustee in the mortgage, filed a libel in the court below to foreclose the mortgage. Mason intervened in the foreclosure suit and set up his claim for expenditures. The Coast Shipbuilding Company and Bankers' Discount Corporation intervened, setting up their claims. The two latter corporations have appealed from the decree of the court below which gave priority, first, to Mason's lien, and, second, to the mortgage.

[1-3] The appellants contend that the libel is fatally defective in that it fails to show that the appellee Ransom complied with the requirements of the statute so as to entitle the mortgage to the status of a preferred mortgage, and to give jurisdiction to foreclose in a court of admiralty under the provisions of the statute of June 5, 1920, 41 Stats. 1000 (Comp. St. Ann. Supp. 1923, §§ 8146¼jj to 8146¼kkk), and that there was no pleading or proof that the mortgage was indorsed upon the ship's documents, or that the mortgagee was a citizen of the United States, and no allegation that the affidavit required by the statute accompanied the mortgage. None of these points was raised in the court below. The libel contains the allegation that the appellee Ransom "is a citizen of the United States." It is the fair inference therefrom that he was such citizen at the time when the mortgage was executed. The copy of the mortgage filed as an exhibit to the libel contained the requisite affidavit, and while it is true that the libel failed to allege that the mortgage was indorsed upon the ship's documents, the absence of such an allegation is believed to be immate-

rial. Such indorsement of the mortgage was a matter with which the mortgagee had nothing to do. It was the duty of the collector of customs to make the indorsement, and the presumption would be, until the contrary were shown, that the collector duly performed his duty. And if indeed there was failure of allegation in that respect the remedy of the appellants was to except to the libel, the defect being one which might have been cured by amendment. In line with our view of the statute are the decisions in The Oconee (D. C.) 280 Fed. 927, and The Owego (D. C.) 292 Fed. 403, holding that the statute is remedial and should be liberally construed. In The Oconee Case the court. said:

"The statute itself nowhere seems to contemplate any default on the part of the mortgagee for the failure of compliance with those sections of the act to be performed by the mortgagor and the master. The mortgagor * * * is subjected to a penalty if he fails to deliver on board the ship a copy of the mortgage. The master is likewise subject to a penalty if he fails to exhibit the same when called upon. The mortgagee, in the nature of things, has no control over either, and the act clearly does not contemplate the invalidity of the mortgage by reason of such failure on their part."

[4] The principal contention concerns the relative rank of the mortgage and the lien of the Coast Shipbuilding Company which was assigned to the Bankers' Discount Corporation. The court below, upon the testimony in the case, found that the Coast Shipbuilding Company waived its lien in favor of the mortgage to Ransom, and that the money obtained on the mortgage would not have been advanced without such waiver. The appellants contend that Green was without authority to waive the prior lien. They cite authorities to the proposition that it is not within the power of an officer or agent of a corporation to give away its assets. It may be conceded that Green as secretary and managing officer of the Coast Shipbuilding Company had no authority to waive the priority of that company's lien. But the decision of the question here involved does not rest upon an inquiry into the limits of Green's authority. There were three directors of his corporation. The evidence leaves no doubt that the corporation was in desperate need of money. Many efforts had been made to raise it. An attempt had been made to borrow it from a bank on a first mortgage on the ship. Green promised the shareholders that if they would advance the money they should have a first lien on the ship therefor. Sherwood, another director, was present at the meeting and was aware of Green's promises. They two constituted a majority of the board of directors of the corporation, and under the laws of Oregon they could exercise the powers vested in the board. Or. Laws, § 6869. There is no ground for saying, as do the appellants, that the acts of Green amounted to a gift or a wanton disposition of the property of his corporation. The corporation had a vital interest in the success of Green's efforts to obtain money on the vessel, and it received its share of the benefit of the money thus obtained. There is no suggestion that in the interval between the execution of the mortgage and commencement of the foreclosure suit the Coast Shipbuilding Company ever repudiated the action of its secretary with whom the other owners of the ship joined in executing the mortgage. We think that the directors are estopped to deny the authority to Green to execute the mortgage and to waive the

first lien on the ship, and that their subsequent conduct was such as to ratify Green's acts.

"It is a general rule that where a corporation by any acts or conduct knowingly causes or permits a person to act as its agent either generally or for a particular purpose, or a particular officer or agent to act in excess of his actual authority, it will be estopped to deny such agency or authority to the injury of a third person who, in good faith and in the exercise of reasonable prudence, deals with such officer or agent on the faith of such appearances." 14a C. J. 368.

[5] Ratification here consists in the fact that the Coast Shipbuilding Company received on the mortgage $35,000, knowing the manner in which it had been obtained, and made no repudiation of the act of its secretary and managing agent.

"It is sufficient that the ratification is made by acts showing an adoption of the act or contract, and it is not essential that it be made in a formal manner." 14a C. J. 381.

[6] Ratification may be implied from acts or conduct. G. V. B. Min. Co. v. Hailey First National Bank, 95 Fed. 23, 36 C. C. A. 633; McDougall v. Hazelton-Tripod Boiler Co., 88 Fed. 217, 31 C. C. A. 487; Galbraith v. First Nat. Bank, 221 Fed. 386, 137 C. C. A. 194; Kelley v. Newburyport & A. H. Railroad Co., 141 Mass. 496, 6 N. E. 745.

[7] The appellants contend that none of the items included in the lien of the appellee Mason, saving and except $6,600 which he paid for the release of the ship at San Pedro, are lienable. Objection is made especially to the item of interest paid upon the note to the United States Bank, $45.20, and the expenses for telegrams and traveling expenses. The statute of 1920, 41 Stats. 1005 (Comp. St. Ann. Supp. 1923, § 8146¼ooo), confers a lien upon "any person furnishing repairs, supplies, towage, use of drydock or marine railway, or any other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner." There was proof that all the expenditures included in the lien awarded to Mason were made on behalf of the ship and were necessary to preserve and protect it. Mason was obliged to travel from Portland to San Pedro, and, in addition to the $6,600 paid to release the vessel, he necessarily incurred incidental items of expense. There was no attempt to deny his testimony that the expenditures were necessary. The item of interest was paid on a note for $7,500 which Mason executed in order to borrow the money to release the ship. In The Ascutney (D. C.) 278 Fed. 991, a lien was allowed for items such as taxi bills and expenditures for telephone, telegrams, and postage. We think that Mason is entitled to a lien for all of the sums allowed him by the court below.

The decree is affirmed.